UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CRIMINAL ACTION NO. 5:07-CR-33-R

UNITED STATES OF AMERICA                                                                                    PLAINTIFF

v.

MICHELLE L. LOVELACE (1)
LINDSEY A. BROOKS (2)                                                                                       DEFENDANTS

### MEMORANDUM OPINION

This matter is before the Court upon the Motion of Defendant Lindsey A. Brooks to Dismiss the Indictment (Docket #18). On January 17, 2008, the Court granted the motion of Defendant Michelle L. Lovelace to join in Defendant Brooks' motion. The United States has responded to the motion (Docket #21) and Defendant Brooks has replied (Docket #22). This matter is ripe for adjudication. For the following reasons, the Motion to Dismiss the Indictment is **DENIED.**

### BACKGROUND

Defendants Michelle L. Lovelace ("Lovelace") and Lindsey A. Brooks ("Brooks") were indicted by a federal grand jury on December 3, 2001. Count I of the indictment charges Lovelace with violating 18 U.S.C. § 1001, False Statement to a Federal Agent. Count II of the indictment charges both Lovelace and Brooks with violations of 18 U.S.C. § 1001 and 18 U.S.C. § 2, Aiding and Abetting. On December 4, 2007, Lovelace entered a not guilty plea as to both Counts I and II, and Brooks entered a not guilty plea as to Count II.

The indictment alleges that on or around September 22, 2007, two women, Tracey Burke and Karen Comer, were murdered in Rineyville, Hardin County, Kentucky, at the residence of Ms. Comer. The Kentucky State Police (KSP) began an investigation of the murder that same

day, and the main suspect was the husband of Ms. Burke, B.B., who at the time was a sergeant with the United States Army, assigned to the Military Police at Fort Campbell. At approximately 8:00 p.m. on September 11, 2007, B.B. was interviewed by KSP detectives concerning the murders. The police were particularly interested in obtaining specific information of B.B.'s whereabouts from the time he departed his assigned job at Fort Campbell around 10:20 p.m. on September 10, 2007, and 6:35 a.m. on September 11, 2007, when B.B. was observed to be present in his assigned room on the Fort Campbell base.

      The indictment alleges that during his interview with KSP detectives, B.B. falsely stated that he was with Lovelace and Brooks in a parking lot adjacent to the Emergency Communication Center on the Fort Campbell base, where both Lovelace and Brooks were employed, from shortly after he departed his work assignment until 1:00 a.m. on September 11, 2007. The indictment also alleges that after providing this statement to the detectives, B.B. placed a telephone call to Lovelace, advising her that his wife had been murdered earlier that day and that Lovelace would be questioned by law enforcement investigators about the murders of Ms. Burke and Ms. Comer. B.B. specifically told Lovelace that she would be questioned about B.B.'s whereabouts on the evening of September 10 and the early morning hours of September 11. The indictment alleges that during the same call, B.B. told Lovelace that she should falsely state to law enforcement investigators that she and Brooks were both with B.B. in the parking lot adjacent to the Emergency Communication Center until 1:00 a.m. on September 11, 2007. B.B. also told Lovelace to tell Brooks to provide investigators with the same information.

      The indictment alleges that Lovelace and Brooks both knew that they parted company with B.B. at approximately 11:30 p.m. on September 10, 2007, and neither saw him or had

contact with him during the morning hours of September 11, 2007.

On September 13, 2007, special agents with the Defense Criminal Investigative Service (DCIS) joined the investigation, and on September 14, 2007, as part of its investigation, special agents with DCIS interviewed Lovelace and Brooks. The Defendants were asked questions about what each knew concerning the whereabouts of B.B. after he got off work from his work assignment at Fort Campbell at around 10:20 p.m. on September 10, 2007.

Count I of the indictment charges Lovelace with a violation of 18 U.S.C. § 1001 and alleges that on or about September 14, 2007, on the Fort Campbell United States Army Base, Lovelace knowingly and willfully made false, fraudulent, and fictitious material statements and representations, knowing those statements to be false, fraudulent, and fictitious, during an interview with special agents of the DCIS. Count I alleges that Lovelace told the agents that B.B. was in her company, and the company of Brooks, in a parking lot adjacent to the Emergency Communication Center on the Fort Campbell base until 1:00 a.m. on September 11, 2007, when she knew that this statement was false because she parted company with B.B. at approximately 11:30 p.m. on September 10, 2007.

Count II of the indictment charges Brooks with a violation of 18 U.S.C. § 1001 and alleges that on or about September 14, 2007, on the Fort Campbell United States Army Base, Brooks knowingly and willfully made false, fraudulent, and fictitious material statements and representations, knowing those statements to be false, fraudulent, and fictitious, during an interview with specific agents of the DCIS. Brooks told the agents that B.B. was in her company, and the company of Lovelace, in a parking lot adjacent to the Emergency Communication Center on the Fort Campbell base until 1:00 a.m. on September 11, 2007, when

she knew that this statement was false because she parted company with B.B. at approximately 11:30 p.m. on September 10, 2007.

Count II also charges Brooks and Lovelace with violations of 18 U.S.C. § 2, aiding and abetting.

## DISCUSSION

Rule 7(c)(1) of the Federal Rules of Criminal Procedure sets out the requirements for the content of an indictment.  Fed. R. Crim. P. 7(c)(1).  The Rule provides as follows:

> The indictment or the information must be a plain, concise and definite written statement of the essential facts constituting the offense charged...It need not contain a formal introduction or conclusion.  A count may incorporate by reference an allegation made in another count.  A count may allege the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation or other provision of law  that the defendant is alleged to have violated.

Fed. R. Crim. P. 7(c)(1).

The Sixth Circuit in *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992), explains the essential requirements needed to bring a sufficient indictment:

> To pass constitutional muster, an indictment must meet a two-prong test: first, the indictment must set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces; second, the indictment must be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts.

*Martinez*, 981 F.2d at 872 (citing *Russell v. United States*, 369 U.S. 749, 763-64 (1962)).

**1.  18 U.S.C. § 2**

To begin, Brooks asserts in her reply memorandum that she is not charged with aiding and abetting under 18 U.S.C.  § 2. As Defendant Lovelace has joined in Defendant Brooks' motion without qualification, the Court will address this argument as it applies to both

4

Defendants. The United States maintains that both Lovelace and Brooks are charged in Count II of the indictment with violations of 18 U.S.C. § 1001 and 18 U.S.C. § 2. As explained below, the Court agrees with the United States.

18 U.S.C. § 2 provides:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

There is no requirement in the law that aiding and abetting under 18 U.S.C. § 2 be explicitly charged in the indictment; explicit notice of the charge is not required in order to support a jury verdict based upon such a finding. *United States v. Lester*, 363 F.2d 68, 72 (6th Cir. 1966). Instead, "[i]t is well settled that aiding and abetting is implicitly embodied in every federal indictment." *United States v. Kirkpatrick*, 2005 U.S. Dist. LEXIS 44297, at *13 (E.D. Tenn. Nov.14, 2005). "Aiding and abetting is merely a theory of criminal liability, not a substantive offense, and need not be explicitly charged in indictments." *Id.* at *13-14 (citing *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949); *United States v. Schuh*, 289 F.3d 968, 976 (7th Cir. 2002); *United States v. Taniguchi*, 49 Fed. Appx. 506, 520 (6th Cir. Oct. 11, 2002); *United States v. McQueen*, 966 F.2d 1455 (6th Cir. 1992)); *United States v. Brooks*, 893 F.2d 1335 (6th Cir. 1990)); *United States v. Maselli*, 534 F.2d 1197, 1200 (6th Cir. 1976); *United States v. Lester*, 363 F.2d 68, 72 (6th Cir. 1966) ("[I]t has long been held that an indictment need not specifically charge 'aiding and abetting' or 'causing' the commission of an offense against the United States, in order to support a jury verdict based upon a finding of either.").

Beyond this implicit embodiment of the aiding and abetting charge, the indictment at

hand actually asserts a violation of 18 U.S.C. § 2 in Count II, which is the count in both Brooks and Lovelace are charged. While Brooks may argue that the wording of the indictment shows that only Lovelace is charged with violating § 2, the Court disagrees. As all indictments must be read as if the alternatives provided by 18 U.S.C. § 2 were embodied in each count, and as the Defendants could be convicted on a § 2 aiding abetting charge without it even having been cited in the indictment, the Court finds that both Brooks and Lovelace are charged with aiding and abetting in the context of the substantive offense of providing a false statement to federal agents in violation of 18 U.S.C. § 1001.

**2.  18 U.S.C. § 1001**

>18 U.S.C. § 1001 provides:

>(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--

> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

>(2) makes any materially false, fictitious, or fraudulent statement or representation; or

>(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

The Defendants contend that the indictment should be dismissed because it fails to sufficiently allege that the DCIS special agents were investigating a "matter within the jurisdiction of the judicial branch of the United States" at the time the Defendants allegedly made the false statements, as required by § 1001(a). The Defendants argue that the facts as alleged in the indictment show that the statements made to DCIS investigators were in a matter within the jurisdiction of the Commonwealth of Kentucky, not within the judicial branch of the United States. In support of their argument, the Defendants contend that the indictment states

6

that the murder investigation was initiated by the KSP and that the murders occurred in Rineyville, Kentucky, and not on federal land.  The Court does not see how those facts, by being placed in the indictment, lead to the indictment's failure to sufficiently allege that the DCIS agents were investigating a matter within the jurisdiction of the judicial branch of the United States at the time those agents questioned the Defendants.

In the motion to dismiss, the Defendants have taken a few liberties with the contents of the indictment.  Contrary to the Defendants' assertions, the indictment does not state that the "DCIS joined the murder investigation for the purpose of determining Brent Burke's whereabouts on the late and early morning hours of September 10 and September 11, 2007."  The indictment states simply that the DCIS joined the investigation along with the KSP.  It also does not state "that DCIS was joined to assist in the KSP investigation of Brent Burke as a suspect for murder under Kentucky law, and not for a violation of any federal criminal statute."  The indictment does not explicitly state the DCIS' purpose in joining the investigation, but implies that the DCIS instituted a concurrent investigation of the murder because it is authorized to investigate any criminal mater in which an active member of the United States military is a possible suspect (¶¶ 5-6).

Further, the Defendants' contention that the DCIS investigators "were acting as KSP detectives and not in their usual role as DCIS Special Agents" makes little sense.  That is simply not possible and the Defendants have cited not authority for such a proposition. The DCIS agents were investigating a murder where the main suspect was a member of the United States Army, which is part of the Department of Defense, of which the DCIS is an investigative agency.

The DCIS is quite clearly an investigative agency within the Department of Defense.

7

*Solid State Devices v. United States*, 130 F.3d 853, 854 (9th Cir. 1997). The indictment states that the main suspect in the murders was the husband of one of the victims and a sergeant in the United States Army assigned to the Military Police at Fort Campbell (¶ 2). It also states that special agents of the DCIS are authorized to investigate any criminal matter in which an active member of the United States military is a possible suspect (¶ 5). The indictment further states that this is a matter within the jurisdiction of the Department of Defense (¶¶ 7-8), which is quite obvious considering the United States Army, of which the murder suspect was an active member, is part of the Department of Defense, and the DCIS is an investigative agency within the Department of Defense that is authorized to investigate such matters.

      The Department of Defense, through the DCIS or its other investigative agencies, has authority to investigate crimes in which active-duty soldiers are suspected, regardless of where the crime is committed. Therefore, the fact that Ms. Burke and Ms. Comer were not murdered on federal land does not remove the Department of Defense's jurisdiction to investigate the crime. There is nothing improper in the fact that the Commonwealth of Kentucky had concurrent jurisdiction over the investigation of those murders, or that the suspect accused of those murders is being tried in state court. The fact that the Defendants were questioned by DCIS agents about the whereabouts of a person who is now being tried for his alleged crimes in a state court does not mean that the DCIS never had jurisdiction over the investigation of that crime or that the Defendants cannot be charged with the federal crime of providing false statements to those agents.

      Therefore, the Court is only left to determine whether the indictment is sufficient to survive the instant Motion to Dismiss. An indictment must meet a two-prong test in order to be

sufficient: (1) it must set out all of the elements of the charged offense and give notice to the defendant of the charges she faces; (2) it must be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts. *Martinez*, 981 F.2d at 872. The elements of a violation of 18 U.S.C. § 1001 for the making of a false statement or representation are: "(1) the making of a statement; (2) the falsity of such statement; (3) knowledge of the falsity of such statement; (4) relevance of such statement to the functioning of a federal department or agency; and (5) that the false statement was material." *United States v. Hixon*, 987 F.2d 1261, 1266 (6th Cir. 1993) (citing *United States v. Gahagan*, 881 F.2d 1380, 1382 (6th Cir. 1989)). The indictment sufficiently sets out all of these elements as to both Defendants.

The indictment clearly alleges that (1) each Defendant made a statement (¶¶ 7-8); (2) the statements were false (¶¶ 7-8);(3) each knew the statements were false (¶¶ 7-8); (4) the false statements were relevant to the functioning of a federal department or agency (i.e., in ¶ 5, "special agents with the Defense Criminal Investigative Service (DCIS), who are authorized to investigate any criminal matter in which an active member of the United States military is a possible suspect, joined the investigation;" and in ¶¶ 7-8, "during an interview with special agents of the Defense Criminal Investigative Service"); and (5) the false statements were material (¶¶ 7-8).

Given all of this, the Court finds that the United States has set forth the elements of the charged statutes in sufficient detail to put the Defendants on notice of the nature of the charges so as to prepare for trial and to preclude the possibility of double jeopardy. *Martinez*, 981 F.2d at 872. Nothing else is required.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss the Indictment is

**DENIED**.

An appropriate order shall issue.